**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                   No. CR-03-2106 MV

DONALD H. GOODE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Donald H. Goode's Motion to Suppress Evidence Seized Pursuant to a Search Warrant Issued Without Probable Cause **[Doc. No. 11]**, filed January 20, 2004. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**.

## BACKGROUND

On April 7, 2003 at 9:00 a.m., Charles George, Chief of Police of the Capitan Police Department in Lincoln County, New Mexico, was notified by dispatch that a man in a motorcycle helmet was harassing the residents at 116 2nd Street. Officer George observed a male individual, later identified as Defendant, standing next to a motorcycle one block from 2nd Street. Defendant told Officer George that his motorcycle would not start and confirmed that he had just come from 2nd Street where a resident "got mad" because he was in his yard. Defendant also told Officer George that he had a car and a trailer parked a few blocks away. Officer George advised Defendant not to go back to the residential area of 2nd Street. Defendant pushed his motorcycle to the side of the highway and then walked back into the residential area of 2nd Street.

At 12:07 p.m., Officer George observed Defendant standing inside the back door of the residence located at 122 2nd Street. At 3:15 p.m., Defendant drove his car, a 1983 blue Buick with a U-Haul truck attached, into the driveway of 122 2nd Street. Thereafter, dispatch reported to Officer George that a suspicious person was entering 122 2nd Street. Officer George then observed the owner of the residence, J.R. Mitchell, enter the house, immediately exit and motion to Officer George. Mr. Mitchell advised Officer George that he did not know Defendant and that Defendant was "messing with his things." Officer George then handcuffed Defendant and put him in his patrol car. Defendant was placed under arrest for criminal trespass and was read his *Miranda* rights. Officer George conducted an inventory search of Defendant's car and had the car towed to H&H Auto Body. There was no contraband discovered during the course of the inventory search.

The Sheriff's office informed Officer George that someone called the office requesting money and medication from Defendant's car. According to Officer George, when Defendant was arrested, he stated that he was not taking any medication. The District Attorney advised Officer George not to give access to the car to anyone but the owner and to obtain a consent to search the car before allowing anyone to pick it up.

On April 8, 2003, dispatch advised Officer George that someone named Mr. Gallegos, who identified himself as an inspector with the Albuquerque police department, called and wanted to get Defendant's car and personal items. Officer George returned the telephone call and Mr. Gallegos reiterated his request. Later that day, dispatch advised Officer George that he received a call from someone named Peter at the Lincoln County Detention Center ("LCDC"). Officer George returned the call and Peter informed him that Defendant was insisting that someone bring him his car and his money.

On April 9, 2003, Sheriff's deputy Robert Shepard, who had been at LCDC, informed Officer George that Defendant insisted that Deputy Shepard find out what happened to his car and money. Officer George faxed a consent to search form to Defendant at LCDC but never received a response.

On April 10, 2003, dispatch advised Officer George that Mr. Gallegos called again asking to pick up Defendant's car and money. Officer George asked Agent Minerva Davillos, an agent with the Lincoln County Drug Task Force, to check Mr. Gallegos's telephone number. Agent Davillos discovered that the number was registered to Ernest Gallegos, an individual with an extensive felony criminal record and with ties to Defendant.

Officer George expressed concern to Agent Davillos about the unusual interest in Defendant's car. As a result of his concern, Officer George requested that Agent Davillos send a certified drug detection dog to the location where the car was impounded. Officer Randy Haskins, a certified dog handler with the Ruidoso police department, brought his dog to the car. The dog circled the outside of the car and alerted to the left rear door.

On April 13, 2003, Capitan police officer Steve Minner called Officer George to advise him that Mr. Gallegos came to the Capitan police station and asked Officer Minner to release Defendant's car to him. Officer Minner told Mr. Gallegos to contact Officer George on April 15, 2003.

On April 15, 2003, Gary Markel, Defendant's probation and parole officer, contacted Officer George and advised him that Defendant had been accused of taking approximately $500 in cash from his girlfriend, Kelly Kirsling, before leaving Albuquerque. Mr. Markel also told Officer George that Defendant is a heroin addict who will do anything to obtain drugs.

On April 15, 2003, Officer George prepared a sworn affidavit and submitted it a Magistrate Judge in order to obtain a warrant for the search of Defendant's car. The affidavit states that the

affiant has reason to believe that Defendant's car conceals: (1) controlled substances; (2) drug paraphernalia; (3) large amounts of currency; and/or (4) firearms. The affidavit provides a description of the events set forth above as the facts tending to establish grounds for issuance of the search warrant. In addition, the affidavit provides Officer George's credentials, experience and training in law enforcement generally and in drug detection in particular. The affidavit concludes that the request for a search warrant is based on Officer George's training and experience and the events that occurred from the date of Defendant's arrest until the date the affidavit was signed.

A New Mexico Magistrate Judge signed the search warrant. Pursuant to the warrant, a search of Defendant's car was conducted. During the search, a Llama .32 caliber pistol was discovered under the back seat of the car.

On October 23, 2003, an Indictment was filed charging Defendant with felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1) and 18 U.S.C. §924(e)(1). Subsequently, on January 20, 2004, Defendant filed the instant motion to suppress. The government filed a response in opposition on February 23, 2004.

## DISCUSSION

Defendant argues that there was no probable cause for the Magistrate Judge to issue the search warrant. Defendant also argues that the *Leon* good-faith exception to the exclusionary rule, discussed below, does not apply to this case. Without conceding that the warrant lacks sufficient probable cause, the government turns directly to issue of whether this case falls within the *Leon* good-faith exception. According to the government, the good-faith exception applies and suppression thus would be improper regardless of whether the warrant was supported by probable cause.

Even if a search warrant is not supported by probable cause, evidence seized pursuant to the warrant need not be suppressed if the good-faith exception to the exclusionary rule, set out in *United States v. Leon*, 468 U.S. 897 (1984), applies. The Tenth Circuit has held that "a reviewing court may, in appropriate cases, turn directly to the good-faith issue without first considering the validity of the warrant under the Fourth Amendment." *United States v. Rowland*, 145 F.3d 1194, 1206 n.8 (10th Cir. 1998). Turning directly to the good-faith issue is appropriate where there are no "important Fourth Amendment questions at issue." *Id.* If, however, "resolution of such questions is 'necessary to guide future action by law enforcement officers and magistrates,' it is appropriate to first address the Fourth Amendment issues." *Id.* (citing *Leon*, 468 U.S. at 925). As a threshold matter, this Court finds that there are no significant Fourth Amendment questions at issue here and, accordingly, it is appropriate to turn directly to the good-faith issue.

"In *Leon*, the Supreme Court modified the Fourth Amendment exclusionary rule by holding that evidence seized pursuant to a search warrant later found to be invalid need not be suppressed if the executing officers acted in objectively reasonable, good-faith reliance on the warrant." *United States v. Rowland*, 145 F.3d at 1206. The Supreme Court explained that the "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. The purpose of the exclusionary rule is "to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916. The Supreme Court "reasoned that police misconduct would not be deterred by excluding evidence seized by officers acting pursuant to a search warrant in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Rowland*, 145 F.3d at 1207.

"[W]hen reviewing an officer's reliance upon a warrant, we must determine whether the underlying documents are '*devoid* of factual support, not merely whether the facts they contain are legally sufficient.'" *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993) (citation omitted) (emphasis in original). In determining whether the *Leon* good-faith exception should be applied, the Court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. In making this determination, the Court must "consider 'all of the circumstances,' and assume the executing officers have 'a reasonable knowledge of what the law prohibits.'" *Rowland*, 145 F.3d at 1207 (citing *Leon*, 486 U.S. at 919 n.20).

The Supreme Court set forth four situations in which the good-faith exception to the exclusionary rule does not apply because "an officer would not have reasonable grounds for believing a warrant was properly issued." *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000). The four situations are as follows:

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his "reckless disregard of the truth." Second, the exception does not apply when the "issuing magistrate wholly abandon[s her] judicial role." Third, the good-faith exception does not apply when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*Id.* (citing *Leon*, 468 U.S. at 922-23).

In support of his argument that the *Leon* good-faith exception does not apply, Defendant states that: (1) the affiant intentionally or recklessly misled the Magistrate with material misstatements or omissions; (2) the warrant is based on an affidavit so lacking in indicia of probable cause as to

-6-

render official belief in its existence entirely unreasonable; and (3) the warrant is so facially deficient in failing to particularize the things to be seized that the executing officer cannot reasonably presume it to be valid.  Defendant, however, makes no claim of any misconduct on the part of the officers in this matter.  Moreover, contrary to Defendant's contentions, there is factual support to establish probable cause, namely: the affiant is an experienced law enforcement officer; Defendant told the affiant that he was not taking any medication and yet someone called requesting medication from Defendant's car; the affiant received several telephone calls about Defendant's car from a convicted felon who falsely identified himself as an inspector with APD; a drug dog alerted to Defendant's car; and Defendant's probation and parole officer indicated to the affiant that Defendant had stolen $500 and was a heroin addict who would do anything to obtain drugs.

  Finally, in the context of a narcotics investigation, the Court cannot agree that the warrant was overly broad in articulating the items to be seized.  In *United States v. Wicks*, 995 F.2d 964 (10th Cir.), *cert. denied*, 510 U.S. 982 (1993), an affidavit attached to a search warrant stated that a search of the defendant's hotel room would result in the seizure of narcotics, documents and items which reflect drug trafficking or cultivation, including large amounts of money, paraphernalia and stolen weapons.  The defendant argued that the items listed in the affidavit attached to the warrant were mere "boilerplate" items, which the agents testified they would expect to find in the residence of a drug trafficker but which they admittedly had no specific reason to believe were in the defendant's motel room.  The Tenth Circuit stated: "A warrant describing 'items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit.'"  *Id.* at 973 (citation omitted).  The affidavit in *Wicks* set forth the affiant's experience in investigating drug trafficking crimes and enumerated the types of evidence of unlawful

activity he would expect to find in the homes of drug traffickers, based on his training, experience and participation in other investigations involving controlled substances. The affiant also detailed what happened during his investigation of the defendant. The Tenth Circuit held:

> We have upheld search warrants cast in comparably broad terms, where the subject of the search was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized. . . . We hold that the warrant met the Fourth Amendment's particularity requirement. The district court therefore correctly denied Wicks' motion to suppress evidence seized pursuant to the warrant.

*Id.* at 973-74. The reasoning of *Wicks* applies with equal force to the facts of the instant case.

Based on the facts presented, the Court finds that the officer who executed the search warrant acted with an objective, good-faith belief that the warrant was properly issued by a neutral magistrate. Defendant has not established that the warrant was devoid of factual support. Moreover, Defendant has not shown that a reasonably well trained officer would have known that the search was illegal despite the Magistrate's authorization. Accordingly, it appears that the *Leon* good-faith exception to the exclusionary rule applies here.

Further, the Court does not find that any of the four situations in which the *Leon* good-faith exception would not apply is present here. Defendant's motion does not state that Officer George or any other officer knew of, or recklessly disregarded, any falsity in the information supplied to the Magistrate Judge. Defendant does not allege that any of the supplied information was false. Accordingly, Defendant's claim that the affiant intentionally or recklessly misled the Magistrate with material misstatements or omissions is not substantiated. Similarly, even if there was not probable cause to support the warrant, there is enough information in the affidavit to constitute indicia of probable case. Accordingly, official belief in the existence of probable cause was not entirely

unreasonable. Moreover, under *Wicks*, the warrant is not so facially deficient in failing to particularize the things to be seized that the executing officer could not reasonably presume it to be valid.

## CONCLUSION

This is a case in which it is appropriate for the Court to turn to the good-faith issue without first addressing the validity of the warrant under the Fourth Amendment. The executing officers acted in objectively reasonable, good-faith reliance on the warrant. Moreover, none of the four situations in which the *Leon* good-faith exception does not apply is present here. Accordingly, the *Leon* good-faith exception to the exclusionary rule applies to the instant case. Suppression of the evidence discovered during the search performed pursuant to the warrant thus would be improper.

**IT IS THEREFORE ORDERED** that Defendant Donald H. Goode's Motion to Suppress Evidence Seized Pursuant to a Search Warrant Issued Without Probable Cause **[Doc. No. 11]** is hereby **DENIED**.

Dated this 17th day of March, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
W. Ronald Jennings

Attorney for Defendant:
Howard L. Anderson